**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **TESHIA ANTOINETTE BIRTS** | ) | **Case No. 11-15918-BFK** |
| | ) | **Chapter 13** |
| **Debtor** | ) | |

**MEMORANDUM OPINION**

In this Chapter 13 case, the Court is called upon to decide the issue of whether the

Debtor's proposed Plan "unfairly discriminates" within the meaning of Section 1322(b)(1) of the

Bankruptcy Code.  The Plan provides for a payment to unsecured creditors of approximately 7%

of the allowed claims, over a 60 month period, while at the same time, keeping the Debtor's

student loan payments current.  The Court holds that the Plan does not unfairly discriminate, and

the Court will confirm the Debtor's Plan.

**Findings of Fact**

The Debtor, a single mother with three children, filed her Chapter 13 petition on August

11, 2011.  On January 10, 2012, the Debtor filed her Second Amended / Modified Plan

(hereinafter, "the Plan").  Docket No. 32.  The Plan calls for a monthly payment of $317 per

month for the first 29 months, and $540 per month for the remaining 31 months of the Plan.  *Id.*

at ¶ 1.  This, according to the Plan, will result in a payment of approximately 7% of the allowed

unsecured claims in the case.  *Id.* at ¶ 4(A).  At the same time, the Debtor is proposing to pay her

student loan at the agreed contractual payment of $271 per month.  Debtor's Sched. J, ¶ 13(b).

The Chapter 13 Trustee objects to the Debtor's Plan on the ground that it unfairly discriminates.

Docket No. 33.  The matter has been argued, and is now ripe for a decision.

**Conclusions of Law**

Section 1322(b)(1) of the Code allows for the designation of one or more classes of

unsecured claims, but provides that the Plan "may not discriminate unfairly against any class so

designated."  11 U.S.C. § 1322(b)(1).  Generally, separate classification is not an issue in

Chapter 13 cases, because the classes do not have a vote as they do in Chapter 11.  Thus, "unfair

discrimination" becomes the battleground.  In paying her student loan payments directly, outside

of the Plan, the Debtor has, in effect, separately classified the student loan debt.

To say that there has been disagreement in the case law concerning the application of the

"unfair discrimination" standard over the years would be an understatement.  Under Section

1322(b)(1), not all discrimination is prohibited; only unfair discrimination.  What is unfair has

been left to the Courts, which have applied a number of different tests.  In *In re Leser*, for

example, the Eighth Circuit articulated a four-part test, as follows:

(1)  whether the discrimination has a reasonable basis;
(2)  whether the debtor can carry out a plan without the discrimination;
(3)  whether the discrimination is proposed in good faith; and
(4)  whether the degree of discrimination is directly related to the basis or rationale for the
      discrimination.

939 F.2d 669, 672 (8th Cir. 1991).[1]

In the case of *McCullough v. Brown (In re Brown),* the U.S. District Court for the

Northern District of Illinois reversed the Bankruptcy Court's confirmation of a plan that

discriminated between student loans and other debt.  162 B.R. 506 (N.D. Ill. 1993).  After an

analysis and ultimately, a rejection, of the four-part test discussed above, the court held: "what

remains clear is that no Chapter 13 plan can be approved that treats unpaid student loans more

favorably than other unsecured debts solely because they *are* student loans."  *Id.* at 517

---

[1]  *Leser* was a case involving child support arrearages.

(emphasis in original). *See also In re Sutton*, No. 10-10539-8-RDD, 2012 WL 433480 (Bankr. E.D.N.C. Feb. 9, 2012) (Chapter 11 case denying confirmation of Debtor's plan where the plan separately classified and discriminated between student loans and other unsecured debt).[2]

Subsequent to the *McCullough v. Brown* decision, the Seventh Circuit issued its decision in *In re Crawford,* 324 F.3d 539 (7th Cir. 2003).  In discussing the various tests, the Court candidly acknowledged:

> We haven't been able to think of a good test ourselves. We conclude, at least provisionally, that this is one of those areas of the law in which it is not possible to do better than to instruct the first-line decision maker, the bankruptcy judge, to seek a result that is reasonable in light of the purposes of the relevant law, which in this case is Chapter 13 of the Bankruptcy Code; and to uphold his determination unless it is unreasonable (an abuse of discretion).

*Crawford*, 324 F.3d at 542.

A number of Courts have adopted the four-part *Leser* test, but have added a fifth factor: "the difference between what the creditors discriminated against will receive as the plan is proposed, and the amount they would receive if there were no separate classification." *In re Mason*, 456 B.R. 245, 251 (Bankr. N.D. W. Va. 2011) (quoting *In re Husted*, 142 B.R. 72, 74 (Bankr. W.D.N.Y. 1992)).  *See also In re Moore*, 31 B.R. 12, 17 (Bankr. D.S.C. 1983).  This latter, five-part test has become known as the *Husted* test.

This Court will adopt a variant of the *Leser* and *Husted* tests, in effect substituting the fifth *Husted* factor, for the fourth *Leser* factor.  The Court finds that the fourth *Leser* factor, that of whether the degree of discrimination is directly related to the basis or rationale for the discrimination, is confusing and not helpful to the Court.  At the same time, the Court finds that the fifth *Husted* factor, the difference between what the creditors discriminated against will receive as the plan is proposed, and the amount they would receive if there were no separate

---

[2]  Chapter 11 contains its own "unfair discrimination" provision in Section 1129(b)(1).

classification, to be highly useful in its determination.  The Court will apply the foregoing

modified test as follows:

       1.   *Whether the Discrimination Has a Reasonable Basis.*

      The Court finds that there is a reasonable basis for the discrimination.  Here, the debts are

non-dischargeable student loans (absent a finding of undue hardship, which has not been

suggested here).  11 U.S.C. § 523(a)(8).  The Court acknowledges the Trustee's position that

Congress has not accorded a statutory priority for student loan debts.  At the same time, a strong

public policy exists in favor of the federal student loan program.  *Educ. Credit Mgmt. Corp. v.*

*Frushour (In re Frushour),* 433 F.3d 393, 399 (4th Cir. 2005) ("That program serves valuable

purposes. It affords individuals in all walks of life the opportunity to obtain an education, and

with it the mobility and financial stability that an education can provide. Indeed, without the

program, many people would never receive any higher education, because their credit risks

would preclude them from obtaining private commercial loans.")  This is a reasonable basis for

separate classification and (not unfair) discrimination.[3]

       2.   *Whether the Debtor Can Carry Out a Plan, Absent Any Discrimination.*

      In this case, the Debtor probably could carry out a Plan that does not provide for monthly

payments on her student loans.  *See infra* Part 4.  However, this would leave her saddled with all

of her student loan debt at the end of the Plan.  Counsel for the Debtor asserts that, if the student

loan is paid on a percentage basis with all of the other debt, the Plan payments will not keep the

interest current on the student loan debts (and the Debtor could incur substantial late fees over

the life of the Plan).  Not only is this not a good result for the Debtor, it gives her an incentive

not to complete her Plan payments and to convert her case to Chapter 7.

---

[3]   Whether one could say the same for other debts determined by Congress to be non-dischargeable, say, a non-dischargeable alcohol-related personal injury debt (11 U.S.C. 523(a)(9)) would be highly debatable.

Case 11-15918-BFK   Doc 37   Filed 02/27/12   Entered 02/27/12 15:09:57   Desc Main
Document      Page 5 of 6

3.  *Whether the Discrimination is Proposed in Good Faith.*

There is no suggestion that the Debtor has proposed her Plan in anything other than good

faith in this case.  The Court finds that the Plan was proposed in good faith.

4.  *The Difference Between What the Creditors Will Receive as the Plan is Proposed,*
    *and the Amount They Would Receive if There Were No Separate Classification.*

As stated above, the Court finds this factor to be highly useful.  The Trustee provided the

Court with a spreadsheet showing what the creditors will receive under both scenarios.  Under

the Plan, the creditors (other than the student loan debt) will be paid approximately 7% of their

claims.  If the amount of the student loan payment ($271) is added to the Debtor's monthly plan

payments, the creditors stand to receive approximately 16% of their claims.[4]  This is, admittedly,

more than double what the unsecureds would receive under the Plan.  However, the student loan

debt of $31,710 represents approximately 34% of the total claims (the other unsecured claims

total $61,412, and all claims total $93,122).  Thus, payments to the unsecureds, in real dollars,

would increase from $4,299 ($61,412 x .07), to $9,826 ($61,412 x .16), or a difference of $5,527.

This is a 60 month plan.  The Court hasn't performed a present value calculation of the amount

of $5,527 over 60 months, because the Court has no evidence on what discount rate would apply,

but the Court notes that, on a straight line basis, this is a difference of $92.17 per month, *for all*

*of the creditors*.

Under the circumstances, the Court finds that the difference of what the creditors are to

receive under the Plan, as proposed, and what they would receive if the student loan debt were

not separately classified, is not so great as to compel a denial of confirmation.  The Court hastens

---

[4]   The Trustee posited a third scenario, using the disposable income shown on Debtor's Schedules I and J, plus the
student loan payment, which would result in a distribution of 19% to the creditors.  However, the Trustee has not
objected to the Plan on the basis of disposable income, 11 U.S.C. § 1325(b)(1)(B), so the Court will not consider this
third scenario.

to say that this is a case-by-case determination.  As noted, other non-dischargeable unsecured

debt may not fare so well.  Even in the student loan context, a greater disparity between what the

creditors are being paid under the Plan and what they would receive if the student loan debt is

not separately classified, could compel a denial of confirmation (for example, a zero percent

plan, and one hundred percent payment to student loans may not be a confirmable plan).

## Conclusion

For the foregoing reasons, the Court will overrule the Trustee's Objections to

Confirmation of the Debtor's Second Amended/ Modified Plan.  Mr. Gorman is requested to

submit an Order confirming the Plan.


Date:                                                    _____
                                                         Brian F. Kenney
                                                         United States Bankruptcy Judge


Copies to:

Teshia Antoinette Birts
4551 Evansdale Rd
Woodbridge, VA 22193
Debtor

Martin C. Conway, Esquire
Martin Conway Law Firm PC
4391 Ridgewood Center Drive
Suite E
Woodbridge, VA 22192
Counsel for the Debtor

Thomas P. Gorman, Esquire
300 N. Washington St. Ste. 400
Alexandria, VA 22314
Chapter 7 Trustee